## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GRANTLAND RICE, II, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No. 2:10-CV-268-RDP** |
| | } | |
| **REGIONS BANK, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Plaintiff's Motion to Remand (Doc. # 8), filed February 10, 2010.  Defendants have had a full opportunity to respond (Doc. # 14), and Plaintiffs have had an opportunity to reply (Doc. #17).  For the reasons set forth below, the Motion to Remand is due to be granted.

## I.     FACTS AND PROCEDURAL HISTORY

On February 25, 2009, Plaintiffs Grantland Rice II, Joseph Robinson, Richard Robinson, Marvin E. Bruce, Michael S. Starnes, Laura M. Starnes, The Michael S. Starnes Charitable Remainder Unitrust, TCX, Inc., Hope Christian Community Foundation, J.N. Raines, Julie Raines, Fischer Lime & Cement Company, Mayer & Morris Kaplan Foundation, RJKB Investments, LLLP, Daniel R. Lewis, Jan R. Lewis, DJMD LP, Bryce Family Limited Partnership, and Urban Child Institute ("Plaintiffs" or "*Rice*" Plaintiffs) filed a Complaint in the Circuit Court of Jefferson County, Alabama against Defendants Regions Bank (hereinafter "Regions Bank"), Morgan Asset Management (hereinafter "MAM"), and James C. Kelsoe, Jr. (collectively, "Defendants") in the Circuit Court of Jefferson County, Alabama, in Civil Action No. CV-2009-900689.  Plaintiffs' Complaint alleges that Defendants made misrepresentations directly to investors regarding certain

investment funds.  Plaintiffs' claims made are exclusively based upon state laws.  (2:10-cv-00268-RDP, Doc. # 1-1).

This is not the first trip to this court that this case has made.  On March 27, 2009, Defendants initially removed this action to this court asserting that Plaintiff's Complaint involved questions of federal law.  Plaintiff filed a timely motion to remand for lack of federal subject matter jurisdiction, which this court granted finding that Plaintiff's Complaint did not raise a federal question.  Accordingly, the case was remanded to the Circuit Court of Jefferson County.  (2:09-cv-00624-RDP, Doc. # 16).

Once back in state court, Defendants conducted what Plaintiffs have correctly characterized as "intense procedural motion practice."  (2:10-cv-00268-RDP, Doc. # 8-1 at 5).  Regions Bank and Morgan Asset Management moved to dismiss, or in the alternative to stay the case until related arbitration proceedings could be completed against a separate entity.  (2:10-cv-00268-RDP, Doc. # 1-4).  Kelsoe joined in that motion.  (2:10-cv-00268-RDP, Doc. # 1-6).  Regions Bank and MAM thereafter filed an amended motion to either dismiss or stay, as did Kelsoe.  (2:10-cv-00268-RDP, Docs. # 1-9, 1-12).  Defendants motions were heard on August 21, 2009.  (2:10-cv-00268-RDP, Doc. # 1-16).

On July 21, 2009, Plaintiffs filed an amended complaint naming Regions Financial Corporation, MAM, and Kelsoe.  (2:10-cv-00268-RDP, Doc. # 1-15).  Defendants Regions Bank, MAM, and Kelsoe again moved to dismiss the amended complaint or to stay pending the arbitration proceedings.  (2:10-cv-00268-RDP, Docs. # 1-18, 1-20).

On September 3, 2009, while the parties were litigating Defendants' motions to dismiss, Regions Financial and MAM moved to consolidate this action with four other actions then pending

in Jefferson County Circuit Court:  *Burke, et al. v. Citigroup Global Markets, et al.*, CV No. 2008-903662 ("*Burke*");  *Holloman v. Regions Bank, et al*, CV-2009-901765 ("*Holloman*"); *James J. Canale, et al. v. Regions Bank, et al.*, CV No. 2009-901453 ("*Canale I*"); and *James J. Canale, et al. v. Regions Bank, et al.*, CV No. 2009-901454 ("*Canale II*").[1]  The State Court Plaintiffs in each of the cases opposed the motion to consolidate.

The *Rice* Plaintiffs vigorously opposed consolidation for reasons that included, among other things, the critical differences between the various actions.  In this case, the *Rice* Plaintiffs assert fraudulent concealment, state securities law violations, negligent supervision, and conspiracy claims.  Their claims relate to direct statements allegedly made by Kelsoe and representations they also contend were made in marketing materials prepared and/or supplied by the other defendants.  (2:10-cv-00268-RDP, Doc. # 8, Ex. 6-1).  In contrast, the allegations of *Holloman, Canale I and Canale II* relate to losses by trusts managed by Defendants.  The claims made in those cases stem from alleged breaches of fiduciary duties, not direct misrepresentations.  (2:10-cv-00268-RDP, Doc. # 8, Ex. 6-1).

Furthermore, in opposing the motion to consolidate, Plaintiffs specifically indicated that they were concerned about the request for consolidation because it could possibly result in preclusion and preemption under the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (codified in scattered sections of 15 U.S.C.), if the motion were granted.  In their response

---

[1] The principal motion was filed in *Burke*, a case that had been filed in 2008, and was incorporated by reference in separate motions filed in the other four cases.  Apparently, *Burke* has been substantially resolved.  Interestingly, Defendants did not seek to consolidate *Betty J. Schreiber v. Regions Financial Corporation, et al.*, CV No. 2009-901764 ("*Schreiber*"), which Defendants now contend was "proceeding together" in state court with *Holloman, Canale I, Canale II,* and this case.  *Schreiber, Holloman, Canale I, Canale II,* and this case will sometimes be referenced as the "State Court Actions" and the plaintiffs in all those cases the "State Court Plaintiffs."

to the motion to consolidate, the *Rice* Plaintiffs alerted Defendants and the state court to the fact that they would be amending their Complaint to add approximately fifteen additional Plaintiffs.[2]

Although the motion to consolidate was denied, Jefferson County Circuit Court Judge Robert S. Vance *sua sponte* had each of the cases that were the subject of the motion transferred to his court so that he could be the sole judge presiding over the five cases. (2:10-cv-00268-RDP, Doc. # 1-27).[3]

On November 13, 2009, Judge Vance denied Defendants' motions to dismiss. (2:10-cv-00268-RDP, Doc. # 1-31). Thereafter, Defendants Regions Financial, MAM and Kelsoe asked Judge Vance to certify the order denying their motions to dismiss so that they could take an interlocutory appeal of that decision. (2:10-cv-00268-RDP, Doc. # 1-34). On December 1, 2010, Judge Vance denied that motion. (2:10-cv-00268-RDP, Doc. # 1-35). On December 12, 2009, Defendants answered Plaintiffs' Amended Complaint. (2:10-cv-00268-RDP, Doc. # 1-36).

Notwithstanding the denial of the motion to consolidate, with Judge Vance's encouragement, the parties began discussing–and negotiating–methods of accomplishing the goals of economy in discovery that had been urged by Defendants. (2:10-cv-00286-RDP, Doc. # 4, Exs. 15 and 16). On October 16, 2009, MAM sent a letter to Plaintiff's counsel which requested that the State Court Plaintiffs provide MAM with a draft discovery plan. (2:10-cv-00286-RDP, Doc. # 4, Ex. 16). MAM's counsel stated that "by working toward a coordination agreement, . . . these cases will be in a better position (consistent with the Judge Vance's stated objectives in having all of these cases transferred to his docket) to move forward once the discovery objections are resolved." (*Id.*).

---

[2] Thus, as of September 11, 2009, Defendants were clearly aware that if these cases were consolidated or otherwise joined, SLUSA preemption might apply.

[3] Judge Vance had all the cases transferred to his complex commercial case docket, but each case continued to have its own individual docket and docket entries. (2:10-cv-00236-RDP, Doc. # 4, Exs. 12 and 13).

On December 15, 2009, Defendants filed a proposed pre-trial schedule in all of the state court cases containing the style of each of the cases on the pleading. (2:10-cv-00268-RDP, Doc. # 1-39). On December 16, 2009, the *Rice* Plaintiffs submitted a proposed pre-trial schedule in their case adopting the schedule proposed by the *Canale I, Canale II,* and *Holloman* plaintiffs. (2:10-cv-00268-RDP, Doc. # 1-37).

Importantly, Defendants did not limit themselves to discussing discovery protocols; they also sought dismissal of the complaints and amended complaints, argued those motions, answered complaints,[4] and entered into protective orders in state court. Defendants also aggressively pursued vindication of their own rights. For example, on December 23, 2009, the *Rice* Defendants (Regions Financial, MAM and Kelsoe) filed a Third Party Complaint against an investment advisory firm, Consulting Services Group, LLC ("CSG"). (2:10-cv-00268-RDP, Doc. # 1-40). In their Third Party Complaint, the *Rice* Defendants sought both indemnity and contribution from CSG and prayed for an award of all damages "resulting from CSG's wrongful acts," including attorneys' fees, costs, interest, litigation expenses, and any amounts necessary to satisfy judgments. (*Id.*).

Also on December 23, 2009, Defendants filed a Petition for Writ of Mandamus related to Judge Vance's denial of their motions to dismiss. (2:10-cv-00268-RDP, Docs. # 1-46, 1-47). The Alabama Supreme Court issued a briefing schedule on Defendants' Petition on January 27, 2010. (2:10-cv-00268-RDP, Doc. # 1-47).[5]

---

[4] It should be noted that in Defendant Regions Bank's Answer to the Amended Complaint in *Canale I*, for example, it asked the court for affirmative relief, *i.e.,* "that Regions be awarded its costs, expenses and attorney's fees," and for "other and further relief."(2:10-cv-00286-RDP, Doc. # 4, Ex. 29) .

[5] The court takes judicial notice of the fact that the briefing on the Petition for Writ of Mandamus was stayed by the Alabama Supreme Court, apparently in light of the removal of this action.

As to the discovery protocols, after some initial attempts to reach agreement by the parties on their own, on January 5, 2010, Judge Vance issued, *ex mero motu*, a separate order in each case calling for a scheduling conference for January 14, 2010, stating that "discovery issues" would be discussed. (2:10-cv-00268-RDP, Doc. # 1-41).   Also on January 5, 2010, the *Rice* Plaintiffs amended their complaint to add fifteen parties. (2:10-cv-00268-RDP, Doc. # 1-42).

On January 14, 2010, during the discovery conference, the parties informed Judge Vance that they were closer to agreement on the terms of a discovery protocol covering depositions. Thereafter, Judge Vance entered the January 14, 2010 Order, which Defendants now contend rendered this case removable pursuant to 28 U.S.C. § 1446(b).[6] (2:10-cv-00268-RDP, Doc. # 1-43).

On January 19, 2010 and on January 25, 2010, in compliance with Judge Vance's January 14, 2010 Order, the parties met and conferred regarding the draft discovery protocol. (2:10-cv-00286-RDP, Doc. # 4, Ex. 13).[7]

---

[6] Notably, Judge Vance's Order does not forbid separate depositions of the same witness in the State Court Actions.  Instead, it urges the State Court Plaintiffs to agree to depose each witness only once.  (2:10-cv-00268-RDP, Doc. # 1-43).

[7] Affidavits in support of a motion to remand are permissible under Eleventh Circuit law so long as the content of the affidavit relates to jurisdictional facts that occurred prior to the action being removed.  *See, e.g., Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (quoting *Allen v. R&H Oil Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)) ("While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that 'under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.'"); *Waldrup v. Hartford Life Ins. Co.*, 598 F. Supp. 2d 1219, 1230 (N.D. Ala. 2008) (considering affidavits submitted by plaintiffs in support of motion to remand regarding issue of fraudulent joinder); *Everett v. MTD Prods., Inc.*, 947 F. Supp. 441, 445 (N.D. Ala. 1996) (considering affidavits submitted by plaintiffs in support of motion to remand regarding issue of fraudulent joinder).  Of course, as it relates to this case, *Sierminski*'s conclusion that post-removal affidavits may be utilized to support a motion to remand survives *Lowery v.*

6

On January 27, 2010, in state court, on a date *after* the date on which Defendants contend the case became removable, in the *Holloman* case, Defendant Regions Bank (whose counsel signed the removal papers in this case)[8] filed a Motion to Join Remainder Beneficiaries.  This motion sought to add parties to that state court litigation on the rationale that "Regions cannot be certain to obtain complete or final relief in their absence." (2:10-cv-00286-RDP, Doc. # 4, Ex. 8).

On January 29, 2010, again on a date *after* the date on which Defendants contend the case became removable, the final Discovery Protocol Order was signed by counsel for all State Court Plaintiffs and by counsel for Regions Bank and MAM, the Trust Defendants.  It was then entered separately in each State Court Action.   That order specifically provides that it may be modified by the unanimous agreement of the parties or by the court for good cause shown.  (2:10-cv-00268-RDP, Doc. # 1-48; 2:10-cv-00286-RDP, Doc. # 4, Ex. 13).   This final version contained the following sentence, just above Judge Vance's signature line, to which MAM and Regions Bank specifically agreed after it was discussed in open court:

> **Nothing in this order approving protocols shall constitute a consolidation, _de facto_ or otherwise, whether for pre-trial discovery or for trial, of the cases in which this protocol is being applied.**

---

*Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007) because the *Lowery* court explicitly limited its holding to removals based on diversity jurisdiction.  *See Lowery*, 483 F.3d at 1215 n.71 (11th Cir. 2007) ("Our holding here is limited to diversity cases. . . . [I]n [federal question] cases, a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction.") (citations omitted).

[8] Regions Bank is represented by attorneys in the same firm as those lawyers who represent Defendants Regions Financial, MAM, and Kelsoe.

(2:10-cv-00268-RDP, Doc. # 1-49; 2:10-cv-00286-RDP, Doc. # 4, Ex. 13) (emphasis added).[9] Also on January 29, 2010, an agreed Protective Order, which was signed by all counsel of record, was entered.  (2:10-cv-00268-RDP, Doc. # 1-50).

On February 4, 2010, Defendants attempted to remove all five state law cases into one case in this court.  (2:10-cv-00268-RDP, Doc. #1).  When the Clerk of Court discovered that the five state court cases had not been consolidated in the state court, Defendants were informed that the removal could not be accomplished in this fashion and that the cases would have to be removed separately. Furthermore, pursuant to the practice of this court, each separately removed case was assigned to the judge who had previously presided over the case prior to its remand to the state.

## II.    STANDARD OF REVIEW

"In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1288 , n. 4 (11th Cir. 1998). It is axiomatic that this court is a court of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  "Because removal jurisdiction raises significant federalism concerns, the removal statutes must be strictly construed. ...  All doubts must be resolved in favor

---

[9] The court finds that this language in Judge Vance's order–and the totality of the circumstances surrounding its entry and the specific inclusion of this language–demonstrates that the clear purpose of this sentence was to eliminate any inference that the State Court Actions before Judge Vance were either consolidated, joined, or proceeding as a single cause of action, so as not to give Defendants an excuse for a removal using 28 U.S.C. § 1446(b) and SLUSA.

of a remand to state court." *Alabama State University v. Baker & Taylor, Inc.*, 998 F.Supp. 1313, 1315 (M.D. Ala. 1998) (internal citations omitted); *see also Univ. of S. Ala.*, 168 F.3d at 411.

Defendants removed this case under the auspices of SLUSA. "Congress passed SLUSA with the intent to make federal court the exclusive venue for class actions alleging state fraud claims in the sale of 'covered securities.' Congress accomplished this goal by providing for the removal of state class action lawsuits to federal court, and requiring federal courts to dismiss those lawsuits that meet certain statutory requirements."[10] *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir. 2003) (citing *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1341 (11th Cir. 2002)). "Under SLUSA, the removing party must show that (1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) [the plaintiffs allege that] the defendant misrepresented or omitted a material fact 'in connection with the purchase or sale of such security.'" *Id.* (quoting *Riley*, 292 F.3d at 1342).

The key question here is whether these cases constitute a "covered class action." The burden of establishing that an action is a "covered class action" under SLUSA is on the removing party. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1092 (11th Cir. 2002). The relevant portion of SLUSA defines a "covered class action" as "(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which-

---

[10] Congress has aimed to strike a balance between the interest in allowing private securities fraud actions and the countervailing interest in combating "strike" suits. In 1995, Congress passed the Private Securities Litigation Reform Act with the purpose of readjusting the balance in favor of combating meritless claims, but that legislation discouraging frivolous federal securities claims actually resulted in an increase in state-court class actions based on state-law claims. Through the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Congress sought to preempt a broad range of state-law claims in an attempt to develop uniform national standards and ensure that the objectives of PSLRA are fully achieved.

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single

action for any purpose."

15 U.S.C. § 77p(f)(2)(A)(ii); 15 U.S.C. § 78bb(f)(5)(B)(ii).

Plaintiffs argue that Defendants have not met their burden to show that this is a "covered

class action" under SLUSA. Alternatively, they argue that even if it is a "covered class action,"

Defendants' removal is barred by the doctrines of waiver and estoppel.

## III.   LEGAL ANALYSIS

### A.   The Five Cases at Issue Have Never Been Consolidated or Joined, and Were Not Proceeding as a Single Action

This case is one of five separate actions which Defendants simultaneously removed to this

court. A motion to consolidate the cases had already been denied by Judge Vance. None of the five

separate actions was originally filed in the state court as a putative class action, nor are damages

sought on behalf of more than fifty persons in any single action. Therefore, to bring the five separate

actions within SLUSA's definition of a covered class action Defendants must show: (1) that there

is a "group of lawsuits filed in or pending in the same court"; (2) that the groups of lawsuits share

"common questions of law or fact"; (3) that "damages are sought on behalf of more than 50 persons";

and (4) that "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any

purpose." *See* 15 U.S.C. §§ 77p(f)(2)(A)(ii); 78bb(f)(5)(B)(ii). It is uncontested that the five

separate actions were pending in the same court in front of the same judge prior to removal. Thus,

the first element is established. The second, third, and fourth elements, however, are contested.

As Defendants correctly point out in their response to Plaintiffs' motion to remand, §§

77p(f)(2)(A)(ii)(II) and 78bb(f)(5)(B)(ii)(II) "identif[y] three distinct types of cooperation that give

10

rise to a covered class action under SLUSA: (1) consolidation; (2) joinder; and (3) proceeding as a single action for any purpose." (2:10-cv-00268-RDP, Doc. # 14 at 20). The elements are in the disjunctive; therefore, Defendant only need to establish that one of them applies here. It is undisputed that the five cases were never joined[11] and they were not consolidated. Indeed, Judge Vance denied Defendants' motion to consolidate. Accordingly, the relevant inquiry is whether the actions were "proceeding as a single action for any purpose."

Defendants argue that the entry of the discovery protocol order by the state court coordinated the five actions in such a way that they were proceeding as a single action for discovery purposes, thus bringing them within SLUSA's definition of a covered class action. Defendants rely on two cases to support their removal: one from the Southern District of New York and another from the Fifth Circuit. *See In re Enron Corp. Sec. Litig.*, 535 F.3d 325 (5th Cir. 2008); *Amorosa v. Ernst & Young LLP*, No. 03-CIV-3902(CM), 2009 WL 4434943 (S.D. N.Y. Nov. 30, 2009), *corrected by Amorosa v. Ernst & Young LLP*, No. 03-CIV-3902(CM), 2010 WL 329956 (S.D.N.Y. Jan. 20, 2010). Their reliance on those cases is off the mark.

*Amorosa* was one of the last of many cases filed in response to fraud allegations surrounding the merger of AOL and Time Warner. *See Amorosa v. Ernst & Young LLP*, 2010 WL 329956, at *4. All of the similar cases which were pending in federal court had been transferred to the Southern District of New York by the Judicial Panel on Multidistrict Litigation, where they were certified as

---

[11] *After* removing the actions to this court, Defendants filed a motion in the *Rice* action to join the five cases. (2:10-CV-268-RDP, Doc. # 4). In each of the other four actions pending in this court, Defendants merely filed a notice of their motion to join that they filed in the *Rice* action. (2:10-cv-283-WMA, Doc. # 4; 2:10-cv-284-AKK, Doc. # 4; 2:10-cv-285-VEH, Doc. # 4; 2:10-cv-286-RDP, Doc. # 5). On February 10, 2010, this court denied that motion, making it clear that these cases have not been consolidated or otherwise joined by this court. (2:10-CV-268-RDP, Doc. # 7). It is also apparent from the state court's denial of Defendants' previous motion to consolidate that it believed formal consolidation or joinder to be inappropriate.

a class action. *Id.* The plaintiff in *Amorosa* thereafter filed an action in the Southern District of New York. In his "civil cover sheet [he] identif[ied] his case as 'related' to the main class action, explaining that his 'allegations on the securities fraud claims [were] *identical* to those made in the class action.'" *Amorosa v. Ernst & Young LLP*, 2010 WL 329956, at *25 (S.D. N.Y. 2010) (quoting Civil Cover Sheet filed by Dominic F. Amorosa, Form JS-44 at 3, *Amorosa v. AOL Time Warner, Inc.*, No. 03-CIV-3902 (S.D. N.Y. May 29, 2003)). By doing so, Amorosa hoped to ensure that his case would be assigned to the same judge who was handling the related MDL class action. The court held that the fact that Amorosa filed his action in the Southern District of New York, where the case "would necessarily be handled *in coordination* with the AOLTW cases–absent any objection by Amorosa–is enough to make Amorosa's action a 'covered class action' as that term is used in SLUSA." *Id.*[12]

Even if this court were to adopt the overly broad construction of the phrase "otherwise proceed as a single action for any purpose" employed by the Southern District of New York in *Amorosa*–and to be clear, it does not–*Amorosa* lacks any procedural similarity to the five cases removed to this court. Unlike the plaintiff in *Amorosa*, Plaintiffs in these cases took no action of their own that was successful and ensured that their cases would together be assigned to Judge Vance. Rather, it was Judge Vance himself who *sua sponte* had all five cases reassigned to him so

---

[12] Amorosa's complaint also incorporated by reference much of the "Second Amended Consolidated Class Action Complaint" from the related class action. *Id.* Finally, Amorosa also requested, and was granted, a stay in his case pending the court's resolution of several motions to dismiss that were filed in the related MDL class action, so that Amorosa could take advantage of any of the court's adjudications that were favorable to his position. *Id.* It was for these reasons that the court noted that Amorosa's "assertion that there was a total 'lack of coordination' between his action and the others rings hollow." The court held that Amorosa's action and the related MDL class action were proceeding as a single action and that the Private Securities Litigation Reform Act or PLSRA therefore preempted his state law claims. *Id.* at *26.

that they could be placed on his complex commercial litigation docket.  (*See* 2:10-CV-268-RDP, Doc. # 8-2 at 5-6).  Even more importantly, unlike the complaint in *Amorosa* (which incorporated *by reference* much of the "Second Amended Consolidated Class Action Complaint" from the related MDL class action), the complaints in these cases are far from identical.  They contain different factual allegations and allege different bases of liability.  As discussed more fully below, three of the cases were filed by trust beneficiaries and assert claims against Regions Bank based on breaches of fiduciary duty in addition to claims for mismanagement of the RMK fund by MAM,[13] while the remaining two cases are direct actions by individual investors against Regions Financial Corp. and MAM for the mismanagement of the RMK fund.[14]  Finally, *Amorosa* is also distinguishable because in that case the plaintiff requested a stay of his action pending resolution of certain motions then pending in the related class action.  He did so in order to take full advantage of the precedent set by such a ruling.  By contrast, the cases at issue here have been proceeding independently through discovery and toward ultimate (but separate) resolution.

Defendants' reliance on *In re Enron Corporation Securities Litigation* to support their argument that these five cases have been proceeding as a single action for discovery purposes is equally unavailing. In *In re Enron*, nine sets of plaintiffs, represented by a single law firm, had filed lawsuits in various state courts across Texas regarding the Enron accounting scandal.  *See In re Enron Corp. Sec. Litig.*, 535 F.3d at 332.  None of the actions were pending in the same court, nor were there more than fifty plaintiffs in any single action.  *Id.*  Nevertheless, the actions were all

---

[13] *See Holloman v. Regions Bank, et al.*, 2:10-CV-286-RDP (*Holloman*); *Canale, et al. v. Regions Bank, et al.*, 2:10-CV-283-WMA (*Canale I*); and *Canale, et al. v. Regions Bank, et al.*, 2:10-CV-285-VEH (*Canale II*).

[14] *See Rice, et al. v. Regions Financial Corp., et al.*, 2:10-CV-268-RDP (*Rice*) and *Schreiber v. Regions Financial Corp., et al.*, 2:10-CV-284-AKK (*Schreiber*).

removed to the Southern District of Texas (where Enron's Chapter 11 bankruptcy proceeding was pending), pursuant to 28 U.S.C. § 1452(a)'s grant of removal jurisdiction for cases "related to" bankruptcy proceedings. *Id.* at 333. After removal, the cases were "consolidated" for pre-trial proceedings. *Id.* The district court denied as futile plaintiffs' subsequent motion for leave to amend their complaints to assert causes of action based on Texas state law, holding that all state law claims would be preempted by SLUSA because the cases satisfied SLUSA's definition of a "covered class action." In affirming the district court's holding that the actions constituted a "covered class action," the Fifth Circuit held, *inter alia*, that the cases were proceeding as a single action "because the plaintiffs have acted in unison throughout the litigation: they filed nearly identical complaints; jointly scheduled discovery; filed joint motions, provided nearly identical discovery responses; and used the same experts and expert reports." *Id.* at 340.

*In re Enron* is different from the five cases removed to this court for a number of reasons. First, the individual actions discussed in *In re Enron* were not removed to the district court under SLUSA, as were the five cases here. Instead, the individual proceedings in *In re Enron* were removed pursuant to 28 U.S.C. § 1452(a)'s "related to" bankruptcy jurisdiction. Adopting the Southern District of New York's reasoning in *In re Worldcom, Inc. Securities Litigation*, the district court made a point to distinguish the cases removed to it, where jurisdiction was asserted pursuant to "related to" bankruptcy jurisdiction, from cases where "removal pursuant to SLUSA" is "used to bootstrap a finding of SLUSA preemption." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2006 WL 3716669, at *6 (S.D. Tex. 2006) (citing *In re Worldcom, Inc.*). Here, the only basis for federal jurisdiction asserted by Defendants is SLUSA. The situation before this court is precisely

one of the "bootstrap" variety that both the *In re Worldcom* and the *In re Enron* courts distinguished from their cases.

Second, as noted above, although the complaints in *Holloman*, *Canale I*, and *Canale II* do indeed contain some similar allegations, the outcomes of each of those cases turn on different issues than those involved in *Rice* and *Schreiber*, and each of those cases have proceeded along divergent discovery paths.  As noted above, the claims in *Holloman*, *Canale I*, and *Canale II* are asserted on behalf of the beneficiaries of trusts over which Regions Bank was the trustee.  In these three actions, MAM and Regions Bank, rather than Regions Financial Corp., are the defendants because, as Plaintiffs allege, "[t]he Trust Plaintiffs were merely beneficiaries of these trusts, not active investors, and were injured as a result of the mismanagement of the trusts and of Regions Bank and MAM's collusive activity regarding the RMK Fund investments in those trusts."  (2:10-CV-286-RDP, Doc. # 4-1 at 31).  Conversely, the claims in *Rice* and *Schreiber* are brought by individuals who made the decision to invest in the RMK Fund.  In those two cases, MAM, Regions Financial Corp., and Kelsoe are named as Defendants because Plaintiffs in those cases complain about the management of the fund itself and the representations made by Kelsoe as a fund fiduciary.  Thus, not only are there different parties in each of the cases, but also there are different theories of liability.[15]  These

---

[15] The *Canale I* plaintiffs admit that *Holloman, Canale I*, and *Canale II* are "similar to each other" because they are all trust actions.  But, even assuming that Defendants are correct and that these trust actions are so similar that they have, in fact, been proceeding as a single action, it is undeniable that they are dissimilar from the *Rice* and *Schreiber* actions because, *inter alia*, those latter cases are proceeding under different theories of liability, seek different relief, and will require individualized discovery responses.  As will be discussed more fully *infra*, even if this court considers *Holloman, Canale I*, and *Canale II* as a single action (and, to be clear, it does not), there remain fewer than the required fifty-one (51) plaintiffs required to make those three cases a "covered class action" unto themselves.

differences necessarily will require different and/or additional discovery among the various actions according to the needs of the different parties and their theories of liability or defense.

Moreover, unlike the cases in *In re Enron*, when the five cases at issue here were removed to this court, they were at different stages of litigation.  A detailed recitation of each and every discovery request and response propounded in each individual action is unnecessary.  Suffice it to say, however, that there are some important points of divergence among the cases.  In the summer of 2009, Plaintiffs in the different cases issued separate document requests, issued separate and different discovery responses to Defendants' requests, and Plaintiffs filed separate motions to compel responses to their requests in *Holloman*, *Canale I*, and *Canale II.*  (2:10-CV-286-RDP, Doc. # 4-1 at 33; *see also* 2:10-CV-286-RDP, Doc. # 4-1, Ex. 5).  On the other hand, it was not until January 19, 2010, that the defendants in *Rice* issued their first set of discovery requests.  (2:10-CV-286-RDP, Doc. # 4-1 at 19).  Additionally, Defendants in *Rice* filed a Third Party Complaint, adding a party against whom only the *Rice* Defendants pursued a claim. (Case 2:10-CV-268-RDP, Doc. # 1-40). In no other action did any of the Defendants implead a third party.

Defendants suggest that Plaintiffs' arguments highlighting such divergences are "hyper-technical." (2:10-CV-286-RDP, Doc. # 8 at 26).  However, in light of Defendants' pedantic approach to these cases, this is simply "the pot calling the kettle black."  That is, Defendants also have made arguments that are worryingly meticulous  about trivial details but have largely ignored Plaintiffs' discussion of the different theories, allegations, focuses, and stages of these cases.  These distinctions show that these cases have not *proceeded* as a single action for *any* purpose up to the point of their removal.

In an apparent attempt to bolster their argument for grouping the cases, Defendants allege that the  Discovery Protocol Order entered by the state court was "proposed by Plaintiffs' counsel." (2:10-CV-268-RDP, Doc. # 1 at 19).  However, simply because Defendants allege–over and again– that the Discovery Protocol Order was Plaintiffs' idea does not make it so.[16]  Plaintiffs suggested the entry of the discovery protocol only in response to the state court's professed desire for "the parties to engage in discovery procedures that would maximize efficiency and economy." (2:10-CV-286-RDP, Doc. # 4-1 at 14).  The record shows that Plaintiffs vehemently opposed Defendants' efforts to otherwise consolidate the cases in the state court.  In fact, Plaintiffs only consented to the Discovery Protocol Order after articulating their concerns to the state court judge that such an order would lay the groundwork for a SLUSA removal and after their fears were allayed by the addition of the final sentence in the Order.  (2:10-CV-286-RDP, Doc. # 4-1 at 17; 2:10-CV-268-RDP, Doc. # 14 at 18 n.6).  Defendants' efforts to portray the Discovery Protocol Order as Plaintiffs' attempt to coordinate the actions so that they would "proceed as a single action," even if only for discovery purposes, is not only disingenuous, but contrary to the record evidence before the court.

In their response to Plaintiffs' motion to remand, Defendants argue that the fact that "Counsel for Plaintiffs are seasoned litigators well-versed in the application of federal law, including SLUSA," betrays (in some way) Plaintiffs' intent for these cases to proceed as a single action.  (2:10-CV-268-RDP, Doc. # 14 at 5).  That argument is far wide of the mark.  To say that "Plaintiffs chose to add Plaintiffs to the actions and to engage in coordinated proceedings . . . with the knowledge that their

---

[16] A sworn statement that the moon is made of green cheese, even if made under the threat of Rule 11 sanctions, "cannot establish the truth of [said] affirmation as matter of law or, indeed, of fact."  *Hitner v. Diamond State Steel Co.*, 207 F. 616, 622 (D. Del. 1913).

actions nudged this group of cases across the SLUSA threshold and transformed them into a covered class action removable to federal court" is not just untenable, it is a fiction that is wholly contrary to both the record and the State Court Plaintiffs' clearly articulated concerns expressed to Judge Vance. (2:10-CV-268- RDP, Doc. # 14 at 5). To find simply that the record does not support such an assertion is to not go far enough. In addition to arguing that these cases have *not* been "proceeding together" as defined by SLUSA,[17] the *Rice* Plaintiffs have consistently argued that the legal principles in this case and in the *Holloman, Canale I,* and *Canale II* cases differ significantly. (2:10-CV-268-RDP, Doc. # 8, Ex. 6-1 at 9-11; 2:10-CV-268-RDP, Doc. # 8-2 at 8-10). Thus, their

---

[17] Even if their other assertions in support of SLUSA removal and preemption are correct–and they are not–Defendants' argument that the mere entry of the Discovery Protocol Order establishes that the cases were proceeding as a single action for discovery purposes fails for another basic and straight forward reason–to date, the cases have not actually *proceeded* under the Protocol Order. (2:10-CV-286-RDP, Doc. # 4-1 at 18 n.16). As noted above, paper discovery has been exchanged in some, but not all, of the cases. But that discovery occurred prior to entry of the Discovery Protocol Order, and the Protocol Order did not undertake to coordinate *all* discovery. Rather, in a single page it sets general ground rules for producing documents, stopping far short of coordinating the production of documents. As the plaintiffs in *Canale I* point out, "[n]o unified document production has taken place." (2:10-CV-286-RDP, Doc. # 4-1 at 18 n.16). The remaining eleven pages of the Protocol Order deal solely with coordinating depositions and establishing a protocol for those depositions.

But even if it could be assumed that the entry of the Discovery Protocol Order meant that the cases would be proceeding as a single action for deposition purposes (and, to be clear, such an assumption is unfounded), that would not be the case until the first deposition was taken pursuant to the Order. It is undisputed that no depositions have been taken by any of the parties in any of the cases, nor have any been scheduled. The deposition of Carter Anthony was scheduled to be taken on February 16, 2010. (2:10-CV-283-WMA, Doc. # 14, Ex. A; 2:10-CV-286-RDP, Doc. # 12, Ex. A). However, that deposition has been cancelled and has not been rescheduled. Judging from the tenor of the email exchanges between counsel regarding Mr. Anthony's deposition, it is unlikely, due to the present posture of these cases, that any depositions will be taken with the voluntary cooperation of the various plaintiffs' counsel, an unfortunate turn that will most certainly result in inefficiency and waste. (2:10-CV-283-WMA, Doc. # 14 at 9 n.2.; 2:10-CV-286-RDP, Doc. # 12 at 9 n.2). But that is the ticket that Defendants have bought and paid for. To "proceed" means to "to begin and carry on an action, process, or movement." (http://www.merriam-webster.com/dictionary/proceed). Here, it is clear that the only proceeding after the entry of the Discovery Protocol Order was Defendants' removal of these cases. These cases present perhaps the ultimate bootstrap situation distinguished by *In re Worldcom* and *In re Enron*, discussed above.

position all along has been that the fundamental premise of SLUSA consolidation, *i.e.,* that there are common questions of law or fact does not apply to these cases.  Plaintiffs base this argument on the fact that their Complaint alleges that direct misrepresentations were made to them, whereas the claims in the other cases are premised on breaches of fiduciary duties to Plaintiffs who are Trusts and the beneficiaries of those trusts.  (2:10-CV-268-RDP, Doc. # 8, Ex. 6-1 at 9-11; 2:10-CV-268-RDP, Doc. # 8-2 at 8-10).

Judge Vance's Order was intended to facilitate the efficient taking of depositions and for the convenience of the deponents common to the actions he transferred to his docket.  The fact that the state court specifically and pointedly stated that *"[n]othing in this order approving protocols shall constitute a consolidation, de facto or otherwise, whether for pre-trial discovery or for trial, of the cases in which this protocol is being applied***,"** shows that it meant for the order to have no other effect.  (2:10-CV-286-RDP, Doc. # 4-1, Ex. 13 at 14; 2:10-CV-268-RDP, Doc. # 8, Ex. 5 at 14) (emphasis added).  Additionally, when the protocol is considered in light of the order the state court entered in the *Rice* action on January 14, 2010, it is even more apparent that the state court was simply attempting to promote efficiency and convenience to the deponents.  Thus, it is clear that the Discovery Protocol Order–which was consented to by all parties *except for Regions Financial Corp. and James C. Kelsoe, Jr.*–was merely an attempt to satisfy the state court's "expectation that plaintiffs' counsel in these related cases will work together so that only one deposition of a particular deponent need be taken for purposes common to all these cases." (2:10-CV-268-RDP, Doc. # 8, Ex. 3 at 3).  To hold that an attempt to serve the aims of judicial economy and convenience to deponents somehow resulted in the transformation of these five separate actions into a single action would

indeed fulfill Plaintiffs' assertion that "No good deed ever goes unpunished." (2:10-CV-286-RDP, Doc. # 4-1 at 14 n.13).

Finally, SLUSA's rule of construction further supports the conclusion that the five actions were not proceeding as a single action. That rule provides that "Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action." 15 U.S.C. §§ 77p(f)(2)(D); 78bb(f)(5)(F). The plain language of this rule gives state court judges broad discretion to determine not only whether cases are to be formally consolidated or joined, but also whether they should be considered to be proceeding as a single action. As Defendants repeatedly warn in their response to Plaintiffs' motion to remand, conflating the formal mechanism of consolidation or joinder with the less formal classification of "proceed[ing] as a single action" would "render the statute's description of the latter category of covered actions . . . entirely redundant." (2:10-CV-283-WMA, Doc. # 10 at 20 (quoting *Amorosa v. Ernst & Young LLP*, 2009 WL 4434943, at *23 (S.D. N.Y. 2009))); *see also Amorosa v. Ernst & Young LLP*, 2010 WL 329956, at *24.

In opposing Defendants' motion to consolidate these actions in the state court, Plaintiffs made clear that the likely result of consolidation would be a second attempt at removal, this time based on SLUSA. (2:10-CV-286-RDP, Doc. # 4-1, Ex. 8, at 11-16.) The uncontroverted affidavit of J. Michael Rediker establishes that Judge Vance specifically intended to avoid a situation that would enable removal under SLUSA. Thus, not only did Judge Vance deny Defendants' motion to consolidate the actions, but he also expressly stated, and the parties agreed, that the Discovery Protocol Order should not be construed to constitute a "*de facto*" consolidation. (2:10-CV-286-RDP, Doc. # 4-1, Ex. 13 at 14; 2:10-CV-268-RDP, Doc. # 8, Ex. 5 at 14). The fact that Judge Vance

20

distinguished between consolidation under the Alabama Rules and "*de facto*" consolidation suggests that a "*de facto*" consolidation would be achieved by informal means.  Given the procedural posture of the cases, Plaintiffs' counsels' concerns and arguments, and the express language of the Discovery Protocol Order, this court understands–and expressly finds–that "*de facto*" consolidation includes, and is synonymous with, "proceed[ing] as a single action" under SLUSA.  It is clear to this court that Judge Vance intended that these five actions remain separate–perhaps for several reasons, but specifically to avoid removal of the cases based on SLUSA.

For these reasons, the court concludes that the five cases removed to this court were not "proceed[ing] as a single action" under SLUSA's definition of a "covered class action."  Because SLUSA does not apply to these cases, this court is without subject matter jurisdiction and the cases are due to be remanded.

### C.    The Cases Do Not Seek Damages on Behalf of Fifty (50) Persons

In light of the previous holding, the court does not need to reach the remaining statutory issue of whether damages are sought on behalf of fifty persons.  Because the cases were not proceeding as a single action, Defendants necessarily cannot establish that Plaintiffs were seeking damages on behalf of fifty persons: a threshold requirement.  None of the cases individually meets or even approaches the "more than 50 persons" requirement.  Therefore, each falls short of constituting a SLUSA "covered class action."[18]

---

[18] Specifically, in *Rice*, even by MAM's creative counting (which incorrectly counts Marvin Bruce twice), only thirty-five individual Plaintiffs are named.  *Canale I* and *Canale II* list nine individual Plaintiffs each (by MAM's disputed count).  The parties agree that *Holloman* and *Schreiber* only have one Plaintiff each.  (2:10-cv-268-RDP, Doc. # 14 at 11 n.5; 2:10-cv-283-WMA, Doc. # 10 at 11 n.5; 2:10-cv-284-AKK, Doc. # 6 at 11 n.5; 2:10-cv-285-VEH, Doc. # 10 at 11 n.5; 2:10-cv-286-RDP, Doc. # 8 at 11 n.5).

**D.      Questions Not Reached Here – Waiver and Estoppel**

In light of the foregoing conclusion that this court does not have subject matter jurisdiction, the court expressly does *not* reach the issue of whether Defendants waived their removal rights or whether the removal is barred by the doctrine of estoppel.[19]   However, the manner in which Defendants handled these cases in state court and upon their removal is troublesome.   To the extent that Defendants intend to lay in wait again and seek an opportunity to "re-re-remove" these cases, they may wish to carefully consider the court's concerns noted below.

**1.      There is a Substantial Issue of Whether Defendants Waived Their Removal Rights**

A party may waive the right  to remove an action in a number of ways.   *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1260-61 (11th Cir. 1999) (finding contractual waiver of the right to remove). For example, a forum selection clause may constitute a contractual waiver of the right to removal. *Ocwen Orlando Holdings Corp. v. Harvard Property Trust, LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008).   Or, a party's conduct in state court litigation may indicate a waiver of the right to remove. *Snapper, Inc.*, 171 F.3d at 1260-61.   When the alleged waiver of the right to remove stems from a contractual provision, the "clear and unequivocal" standard for evaluating the existence of the waiver does not apply; however that is the standard when the waiver is claimed to arise from a party's conduct in litigation.   *Ocwen Orlando Holdings Corp.*, 526 F.3d at 1381; *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271-72 (11th Cir. 2004); *Snapper, Inc.*, 171 F.3d at 1260-61.

---

[19] The court also need not address, in any further detail, the procedural irregularities in Defendants' removal of these cases.

22

Applying the "clear and unequivocal" standard, the Fifth Circuit has held that, "the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits." *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003) (citing *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989) (quoting 1A James W. Moore, et al., Moore's Federal Practice ¶ 0.157[9] at 153 (3d ed.1987)), *superceded by statute on other grounds as stated by Dendinger v. First Nat'l Corp.*, 16 F.3d 99 (5th Cir. 1994)).  Or, as more recently articulated by another court in this Circuit, "[a] defendant may waive the right to remove to federal court by proceeding to defend the action in state court or by otherwise invoking the process of the state court." *Ayes v. H & R of Belle Glade, Inc.*, 2008 WL 1840714, *1 (S.D. Fla. 2008) (citing *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986); *Somoano v. Ryder Sys., Inc.*, 985 F.Supp. 1476, 1478 (S.D. Fla. 1998); *Scholz v. RDV Sports, Inc.*, 821 F.Supp. 1469, 1470 (M.D. Fla. 1993); *Miami Herald Pub. Co. v. Ferre*, 606 F.Supp. 122, 124 (S.D. Fla. 1984)).

While the Eleventh Circuit has held that the filing of a motion to dismiss, alone, does not waive the right to appeal, *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246-47 (11th Cir. 2004), that case was removed before a hearing was scheduled on the motion or a decision rendered.  Thus, the Eleventh Circuit has not yet spoken to whether a waiver may occur when the motion had not only been argued and decided, but also when a motion to certify the decision for an interlocutory appeal and a petition for writ of mandamus had been filed.  Similarly, the Eleventh Circuit has also not yet weighed in on whether the filing of an answer and participating in discovery waives the right to remove.  *See Franklin v. City of Homewood*, 2007 WL 180441, *5 (N.D. Ala. 2007).  However, certain district courts within this Circuit have addressed this issue.

23

Judge Albritton of the Middle District of Alabama summarized the relevant analysis on the waiver issue as follows: "The relevant case law reveals two factors that guide the court's analysis in determining whether the right to remove a case to federal court has in fact been waived: 1) whether the actions taken by the Defendants in the state court were for the purpose of preserving the status quo, or did they manifest an intent to litigate on the merits in state court and 2) whether the removal can be characterized as an appeal from an adverse judgment of the state court." *Fain v. Biltmore Securities, Inc.*, 166 F.R.D. 39, 40 (M.D. Ala. 1996) (citing *Bolivar Sand Co. v. Allied Equipment, Inc.*, 631 F.Supp. 171, 173 (W.D. Tenn. 1986); *Scholz v. RDV Sports, Inc.*, 821 F.Supp. 1469 (M.D. Fla. 1993); *In re 73rd Precinct Station House in Borough of Brooklyn, City of New York*, 329 F.Supp. 1175 (D. N.Y.1971)).  Judge Bowdre from this district has applied this same analysis to the question of whether a defendant has waived the right to remove.  *See Franklin v. City of Homewood*, 2007 WL 180441, *5 (N.D. Ala. 2007).  Particularly relevant to an analysis of this issue in this case would be the premise recognized by both Judge Albritton and Judge Bowdre that "[r]emoval will not be permitted if the defendant's underlying motive is to appeal an unfavorable decision." *Franklin*, 2007 WL 180441 at *5.  In the cases before Judges Albritton and Bowdre, the facts did not warrant even addressing the second prong of the analysis as set forth in *Fain*.  Here, however, the facts would compel the court to address both prongs of the waiver analysis.[20]

---

[20] Of course, in light of the fact that the premise of Defendants' removal of this action is that this case was otherwise proceeding as a single action with four other cases (2:10-cv-268-RDP, 2:10-cv-283-WMA, 2:10-cv-284-AKK, and 2:10-cv-285-VEH), Defendants' conduct in state court in *all* of these cases would be relevant to the issue of whether they waived their right to remove the cases as a "covered class action" under SLUSA.

### a. There is a Substantial Issue of Whether Defendants Waived Their Right To Remove By Invoking the Process in State Court

In the cases at issue here, Defendants did more than file a motion to dismiss or an answer before removing the case. Defendants actively argued motions to dismiss in all of the state court cases, and sought judgment in their favor. After obtaining rulings on the merits of those motions, which were unfavorable to Defendants, they answered the Complaints in each case. In *Rice*, not only did Defendants ask the state court to certify its decision denying their motion to dismiss so as to allow an interlocutory appeal, but they also petitioned the Alabama Supreme Court for mandamus relief directed to Judge Vance.

Defendants also moved the state court to consolidate the actions at issue, ostensibly to avoid duplicative discovery. After their motion to consolidate was denied, Defendants then actively engaged Plaintiffs' counsel in negotiations to develop informal discovery protocols and, eventually, sought the court's intervention to formalize those negotiated protocols. (Case 2:10-cv-268-RDP, Doc. # 8, Ex. 5). Interestingly, however, as discussed above, the final negotiated protocol contained an agreed-upon provision that the protocol itself would not constitute a consolidation, *de facto or otherwise*. (*Id.*).

Also in *Rice*, Defendants filed a Third Party Complaint which added a party against whom only Defendants pursued a claim. In their Third Party Complaint, Defendants sought judgment in their favor, affirmative legal and equitable relief, and a jury trial on their own claim. (Case 2:10-cv-286-RDP, Doc. # 4, Ex. 25). In addition, they served deposition notices, interrogatories, request for production, and request for admissions. (*See* Case 2:10-cv-286-RDP, Doc. # 4, Ex. 13, 27-28). These actions are clearly "invoking the process" in state court.

The court fully expects that one of the responses Defendants would offer in light of their actions was that the conduct took place before this (and the other four cases) were removable. However, even more critical is the conduct that took place *after the date that Defendants contend the case became removable*. Specifically, on January 27, 2010, in the *Holloman* case, Regions Bank filed a Motion to Join Remainder Beneficiaries which sought to add parties to the state court litigation. In support of its motion, Regions Bank alleged that "Regions cannot be certain to obtain complete or final relief in their absence." (Doc. # 4, Ex. 8 at 3). Furthermore, even at this stage, Defendants were entering into agreements regarding the conduct of discovery in the state court cases. The Discovery Protocol Order containing the agreed-upon language that "[n]othing in this order approving protocols shall constitute a consolidation, *de facto* or otherwise, whether for pre-trial discovery or for trial, of the cases in which this protocol is being applied," was signed by the parties on January 29, 2010. (2:10-cv-00268-RDP, Doc. # 1-49; 2:10-cv-00286-RDP, Doc. # 4, Ex. 13). Thus, Defendants made that agreement and consented to that order in the state court proceedings– after the time that they claim the case was already removable.

In light of these actions, it would appear frivolous at best (and bizarre at worst) for Defendants to assert that they did not waive their right to remove the cases currently under consideration by "invoking the process of the state court." *See Ayes*, 2008 WL 1840714 at *1; *Brown* , 792 F.2d at 481. That is, on this record, it would appear to be clear and unequivocal that Defendants waived their right to remove because their conduct in state court was more than simply defensive, designed to maintain the status quo.

**b.**     **There is a Substantial Issue of Whether Defendants' Underlying Motive Was to Appeal an Unfavorable Decision**

As to the second prong of the waiver analysis, Defendants' conduct quite clearly evidences an intent to appeal an unfavorable decision.   Specifically, Defendants desire to obtain another shot at the consolidation apple.   Their actions in these cases, viewed in their totality, reveal an underlying motive to obtain an "appeal" of Judge Vance's decision refusing to consolidate the cases.   A prime illustration of this intent is the fact that, despite the fact that Judge Vance denied their motions to consolidate, Defendants initially presented these five cases to this court as one removal.

Defendants have made plain their desire to have these cases transferred to the Multi-District Litigation proceeding in the Western District of Tennessee.  Upon the initial removal of each of these cases, Defendants filed motions to stay pending transfer to the MDL.   When the cases were remanded, Defendants apparently recognized the possible availability of another avenue to get these cases to that MDL: SLUSA.   However, to employ SLUSA as a means to the MDL, they had to (among other things) consolidate and/or join the cases.   Thus, they filed a motion seeking consolidation before Judge Vance.   Judge Vance denied that motion.   Formal consolidation, however, was not the only method of "joining" these cases for SLUSA purposes.   Therefore, they sought to have them "proceed together" by coordinating discovery.   However, Plaintiffs were aware of the underlying motive for the coordinated discovery.   Therefore, Plaintiffs refused to agree to joint discovery protocols for fear of bringing their cases under the auspices of SLUSA.   It was apparently for this reason that the last sentence of the last paragraph of the Discovery Protocol Order, which counsel for Defendants signed, was crafted:

> Nothing in this order approving protocols shall constitute a consolidation, *de facto* or otherwise, whether for pre-trial discovery or for trial, of the cases in which this protocol is being applied.

(Case 2:10-cv-268-RDP, Doc. # 8, Ex. 5).

Almost immediately following Defendants' agreement to this language, which was further memorialized by Judge Vance's entry of the Discovery Protocol Order, Defendants again removed these cases (and tried to do so as one case). Apparently, Defendants' initial re-removal attempt sought to accomplish the consolidation previously denied by Judge Vance. Upon learning that they would not be allowed to proceed in this manner, and that instead the cases must be removed separately and each assigned to the judge who previously handled the case, Defendants were not deterred. Defendants removed the cases separately, but shortly thereafter filed a Motion to Join Related Cases in this first-removed *Rice* case, and filed Notices of the Filing of the Motion to Join were filed in the other cases. In light of the fact that Judge Vance had already denied Defendants' Motion to Consolidate, this series of events could clearly be characterized as an appeal of Judge Vance's adverse decision on the Motion.[21]

### 2. There is a Substantial Issue of Whether Defendants' Removal of this Action Is Barred By Doctrine Estoppel

"The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'" *Robinson v. Tyson Foods, Inc.*, --- F.3d ----, 2010 WL 396130, * 2 (11th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). That is, the doctrine is designed to prohibit a party from making an assertion in one case which is inconsistent with an assertion made by that party in a prior proceeding. *Robinson*, --- F.3d ---- at * 2. "Estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994).

---

[21] This series of events also constitutes a prime example of forum shopping.

At the time the Discovery Protocol Order was executed on January 29, 2010, Defendants were aware that Plaintiffs did not wish to consolidate these cases because of concerns regarding SLUSA preemption.  Defendants have taken the position that the case was already removable, based upon Judge Vance's January 14, 2010 Order, at the time they entered into the Discovery Protocol Order.  By executing the Discovery Protocol Order, Defendants represented to the state court and to Plaintiffs that they would not argue that the coordinated discovery would be used as a basis to argue consolidation, *"de facto* or otherwise."   (2:10-cv-00268-RDP, Doc. # 1-49 at 14). Nevertheless, Defendants appeared in this court on February 4, 2010 arguing that there was a *de facto* consolidation (although they call it "proceeding together" under SLUSA).

The Eleventh Circuit's formulation of the elements of judicial estoppel are (1) the "allegedly inconsistent positions must have been made under oath in a prior proceeding," and (2) the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson*, --- F.3d ----,  2010 WL 396130 at *2 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).

Defendants' position in the state court, memorialized in the Discovery Protocol Order, is directly contrary to the position taken by them in this court that the state court cases were *de facto* consolidated or joined, or "proceeding together."  Although neither the Discovery Protocol Order, nor the removal papers in this court were made by Defendants "under oath," they were each signed by their counsel and filed in the respective courts.  In this regard, the court notes that the relevant portions of Federal Rule of Civil Procedure 11 provide as follows:[22]

---

[22] The court refrains for the moment from setting forth the relevant portions of Rule 11(c), Fed.R.Civ.P.

(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b).  Thus, the signing, filing, and/or submission of pleadings or other documents to the court is the practical equivalent of making a statement under oath, at least for purposes of an estoppel analysis.  The Defendants' position taken in the removal papers regarding the operation and effect of the Discovery Protocol Order is inconsistent with the position taken by them in state court in the Discovery Protocol Order.  Therefore, the first element of judicial estoppel is satisfied.

"While an estopped party's contradiction must be intentional, such intent may be inferred from the record." *Robinson*, --- F.3d ----,  2010 WL 396130 at *4 (citing *Burnes*, 291 F.3d at 1285). As discussed above, Defendants' removal is essentially an appeal of Judge Vance's decision refusing to consolidate these cases and a another attempt to get these cases to the MDL in the Western District of Tennessee.  Through improper means and by taking inconsistent positions, Defendants are trying to obtain the result previously denied by Judge Vance.  To allow Defendants to induce Plaintiffs into entering into the Discovery Protocol Order, with the explicit representation that it would not

constitute a *de facto* consolidation, and then allow them to use it as evidence of a *de facto* consolidation would certainly allow Defendants an unfair advantage (possibly the preemption of Plaintiffs' chosen state law claims).  Moreover, this Janus-like[23] move was executed *after the date Defendants contend the case became removable*.  To allow Defendants to take these divergent positions would let them eat their cake and have it, too.

Moreover, there can be no doubt that the positions taken by Defendants were "intentional contradictions, not simple error or inadvertence." *See Robinson*, --- F.3d ----, 2010 WL 396130 at *6 (Anderson, J. concurring).  Their conduct evidences an intent to "make a mockery of the judicial system."[24]  Accordingly, if it were to reach the issue of estoppel, absent compelling arguments made by Defendants to the contrary–and to be sure, they have made no such arguments at this time–the court would have no hesitation in concluding that this is precisely the type of conduct that the doctrine of estoppel was designed to prohibit.

## III.    Conclusion

For the reasons outlined above, the court finds Defendants have not carried their burden of establishing that the court has subject matter jurisdiction over the claims in this case.  By separate order, the court will remand this case to the Circuit Court of Jefferson County, Alabama.[25]

---

[23] In Roman mythology, Janus was the god of gates, doors, doorways, and new beginnings. In many portrayals, Janus is depicted as having two faces, looking in opposite directions.

[24] There is a cardinal rule that there is no client or matter worthy of a lawyer risking his or her reputation.  The court suggests that Defendants counsel examine their conduct in light of this rule.

[25] Against its better judgment, the court will again let costs remain taxed as paid.  If this case is improvidently removed again, the court will not hesitate to impose such sanctions.

**DONE** and **ORDERED** this _____8th_____ day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE